# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JON ROBBINS, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 17-2763 |
| v. | : | |
| FULTON BANK, N.A., | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                            April 6, 2018

After the plaintiff filed for bankruptcy, the defendant bank commenced an adversary proceeding against him claiming that his debts to the bank were non-dischargeable. The plaintiff believes that the bank commenced this adversary proceeding without probable cause and for an improper purpose. The plaintiff prevailed in the adversary proceeding and then commenced this action in diversity seeking to recover damages against the bank under a variety of Pennsylvania state law claims based on the bank's wrongful initiation of the adversary proceeding.

The bank contends that the Bankruptcy Code preempts this case and, accordingly, now moves for summary judgment in its favor. The bank advances two arguments for why the court should hold that the Bankruptcy Code preempts the state law claims. First, the bank points out that a majority of circuit courts of appeals have found that the Bankruptcy Code preempts these types of claims. The Third Circuit, however, appears to be in the minority on this issue. After a thorough and detailed review of binding precedent, the court determines that these claims are not preempted in the Third Circuit.

Second, the bank contends that even if the court finds the plaintiff's claims are not preempted as a matter of federal law, the court is sitting in diversity and is therefore bound by

the Pennsylvania Supreme Court's precedent holding that these claims are preempted. This argument is also unavailing. A federal court is not bound by a state court's ruling on an issue of federal law (such as preemption) even when the case is before the federal court on diversity jurisdiction. Accordingly, the court will deny the motion.

## I. PROCEDURAL HISTORY

The plaintiff, Jon Robbins ("Robbins"), filed a complaint against the defendant, Fulton Bank, N.A. (the "Bank") on June 20, 2017. Doc. No. 1. The complaint raised four counts: (1) wrongful use of civil proceedings under 42 Pa. C.S. §§ 8351-8354, (2) abuse of process, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. *See* Compl. at 19–22, Doc. No. 1. The Bank filed a motion to dismiss the complaint on August 9, 2017 asserting, *inter alia*, that the Bankruptcy Code preempts Robbins' claims. Doc. No. 8. On October 31, 2017, the court denied the motion without prejudice to the Bank raising its arguments again in a motion for summary judgment, upon the development of a more complete record. *See* Oct. 31, 2017 Order, Doc. No. 17.

Thereupon, the parties engaged in fact discovery. *See* Oct. 31, 2017 Scheduling Order, Doc. No. 18. However, before fact discovery concluded, the Bank requested permission from the court to file a motion for summary judgment. *See* Jan. 26, 2018 Minute Entry, Doc. No. 27. Specifically, the Bank believed, as it had argued in its motion to dismiss, that the Bankruptcy Code preempted Robbins' claims. The court granted the request, suspended all case management deadlines, and set a schedule for the Bank to file the motion for summary judgment. *See* Jan. 26, 2018 Order, Doc. No. 26.

The Bank filed a motion for summary judgment on February 16, 2018. Doc. No. 28. Robbins filed a response in opposition to the motion on March 9, 2018. Doc. No. 29. The Bank

filed a motion seeking leave to file a post-argument supplemental brief on March 22, 2018, and the court granted the motion on March 27, 2018. Doc. Nos. 31, 32. The Bank filed the supplemental brief on March 28, 2018. Doc. No. 33. Robbins filed a response to the supplemental brief on April 5, 2018. Doc. No. 35. The motion for summary judgment is now ripe for adjudication.

## II. FACTUAL BACKGROUND

Robbins was president and shareholder of High Fidelity House ("Hi-Fi House"), a family-owned business. *See* Statement of Undisputed Material Facts Supp. Fulton Bank N.A.'s Rule 56 Mot. for Summ. J. ("Def.'s Statement") at 1, Doc. No. 28-1; *see also* Pl. Jon Robbins's Resp. to Def.'s Statement of Undisputed Material Facts ("Pl.'s Statement") at 1, Doc. No. 29-1; Compl. at ¶ 8; Answer at ¶ 8, Doc. No. 22. Robbins' father, Saul Robbins, ran the business from 1955 until his retirement in the 1990s. *See* Def.'s Statement at 1; Pl.'s Statement at 1; *see also* Compl. at 3. "Between 2012 and 2013, [the Bank] extended three loans to HiFi House." Def.'s Statement at 1 (alteration to original); *see also* Pl.'s Statement at 1–2. In 2012, the Bank declared a covenant default against Hi-Fi House. *See* Def.'s Statement at 2; Pl.'s Statement at 2.

Robbins contends that after the Bank declared default he offered it all of his non-exempt assets to satisfy the loans. *See* Compl. at 7. Robbins claims that in response the Bank demanded $5 million from him and his father. *See id.* at 7–8. According to Robbins, this request was motivated by the Bank's desire to access his father's exempt IRA assets. *See id.* at 8. Because the Bank's demand exceeded Robbins' non-exempt assets, Robbins filed for bankruptcy. *See id.* at 8–9; Def.'s Statement at 2. The Bank then initiated an adversary proceeding in Bankruptcy Court against Robbins. *See* Def.'s Statement at 2; Pl.'s Statement at 3. In the adversary proceeding, the Bank argued that Robbins' debts were non-dischargeable. *See* Def.'s Statement

3

at 2; Pl.'s Statement at 3.  Robbins contends that the Bank's adversary proceeding was intentionally filed in bad faith.  *See* Compl. at 8–9.  Specifically, Robbins contends the Bank filed the action to pressure Saul Robbins to use his exempt IRA funds to satisfy the debt.  *See id.*

### III.  DISCUSSION

#### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this case, the material facts are undisputed.  The undisputed material facts are that Robbins' Pennsylvania state law claims are all based on the Bank's conduct in the bankruptcy proceeding (*i.e.*, the Bank's decision to file an adversary proceeding).  *See* Compl. at 19–22; *see also* Mem. of Law in Supp. of Fulton Bank's Mot. for Summ. J. at ECF p. 4 ("Def.'s Br."), Doc. No. 28-2.  Consequently, the court's decision will hinge on whether the legal grounds for dismissal raised in the Bank's motion are sufficient to entitle it to summary judgment as a matter of law.  Ultimately, the court concludes that they are not and, accordingly, denies the motion for summary judgment.

#### B.  Analysis

The Bank raises two separate grounds for dismissal. First, it contends that "[a]ll claims arising from the Adversary Proceeding are preempted by the Bankruptcy Code . . . ." Def.'s Br. at ECF p. 4.  Second, it argues that because this case is here on diversity jurisdiction, the court should follow the Pennsylvania Supreme Court's precedent which would mandate finding that the Bankruptcy Code preempts Robbins' claims.  *See id.* at 4–5 (citing *Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875 (Pa. 2006)).

4

The Bank's second argument requires little discussion but raises a point of interest worth noting. If this action had been brought in state court, it would have been dismissed based on the Pennsylvania Supreme Court's finding that such actions are preempted by the Bankruptcy Code and the Federal Rules of Civil Procedure. *See id.* But as Robbins correctly points out, "[p]reemption is a matter of federal law." Pl. Jon Robbins's Mem. in Opp. to Def. Fulton Bank's Mot. for Summ. J. ("Pl.'s Br.") at ECF p. 7, Doc. No. 29; *see, e.g.*, *Grantham v. Avondale Indus., Inc.*, 964 F.2d 471, 473 (5th Cir. 1992) ("[W]e are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question."). As such, this court is not bound by the Pennsylvania Supreme Court's ruling, regardless of the fact that this case is here on diversity jurisdiction. The court instead examines established federal precedent to determine the issue of preemption.

The Bank contends that, as a matter of federal law, the Bankruptcy Code preempts state law claims for conduct arising out of bankruptcy litigation. The logical and legal reasons for supporting this position are strong. Logically, there are persuasive reasons for finding preemption in a case such as this. Allowing a plaintiff to bring a collateral attack against bankruptcy proceedings through state law claims allows the states to (potentially, at least) disrupt the delicate balance Congress struck in fashioning the Bankruptcy Code. *See* Def.'s Br. at 11–12. Legally, a number of circuits that have looked at the issue have found that the Bankruptcy Code preempts claims for conduct arising out of bankruptcy litigation. *See, e.g.*, *MSR Expl., Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir. 1996).

While there are persuasive reasons for finding preemption here, this court is bound by Third Circuit precedent. There are three reported Third Circuit cases identified by the parties that have bearing on this issue: *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47 (3d

5

Cir. 1988), *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414 (3d Cir. 2016), and *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002). The court will discuss each in turn.

In *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47 (3d Cir. 1988), the Third Circuit held that the Bankruptcy Code did not preempt a debtor's state malicious prosecution and abuse of process claims against a creditor for filing a chapter 7 involuntary bankruptcy petition against it. *See id.* at 48–49. In analyzing the preemption issue, the Third Circuit discussed section 303(i)(2) of the Bankruptcy Code, which provides a specific remedy in cases where a creditor abuses the involuntary petition mechanism. *See id.* at 52 (discussing 11 U.S.C. § 303(i)(2)). The court noted that in these instances, section 303(i)(2) provides for recovery of proximate and punitive damages. *See id.* While the court "agree[d] that . . . [section 303(i)(2)] was intended to permit a bankruptcy court to adjudicate claims in a Chapter 7 proceeding like those of [the plaintiff]," *id.* at 52 (alterations to original), the court found that section 303(i)(2) "does not require that all such claims be so adjudicated . . . ." *Id.* In other words, section 303(i)(2) was not "an exclusive remedy for such claims." *Id.*

Arguably, the Third Circuit's decision was motivated in part by the fact that section 303(i)(2) was not actually available to the plaintiff in *Paradise Hotel*. *See id.* The plaintiff contended that it was forced—by the defendant's involuntary petition—to file its own voluntary petition under chapter 11. *See id.* at 48. Upon filing of the Chapter 11 petition, the plaintiff "requested that the bankruptcy court stay the involuntary bankruptcy proceeding initiated by the [defendant]." *Id.* (alteration to original). Section 303(i)(2), however, is only available with respect to involuntary proceedings filed under Chapter 7. *See id.* at 51–52. Because the plaintiff elected to proceed under Chapter 11, the Chapter 7 remedy for creditor abuses of the involuntary petition mechanism was no longer available. *See id.*

6

The Third Circuit noted that it would have been unfair to force the plaintiff to choose between being subject to the involuntary petition (and retaining access to 303(i)(2)) or filing under Chapter 11 (and losing *all* access to abuse-of-process-related relief). *See id.* at 52. Consequently, the Third Circuit found that "Congress did not intend that a debtor should have to pay this kind of penalty for exercising its statutory right to convert [from Chapter 7 to Chapter 11]." *Id.* (alteration to original).

In *Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414 (3d Cir. 2016), the Third Circuit refused to find that the Bankruptcy Code preempted third parties' abuse of process claims. *See id.* at 421–22. *Rosenberg*, like *Paradise Hotel*, involved an involuntary petition and section 303(i)(2). *See id.* at 418. Unlike *Paradise Hotel*, the plaintiffs in *Rosenberg* were not parties in the bankruptcy proceeding. *See id.* They were, however, closely connected with the bankruptcy debtors. *See id.* at 416–17. Because of their close business relationships, they were negatively impacted when the defendant filed an involuntary petition against the debtor. *See id.* But because they were not parties to the bankruptcy proceeding, the section 303(i)(2) remedy was unavailable to them. *See id.* at 418. Consequently, they sought to bring state law tort claims against the defendant. *See id.* The defendant argued that section 303(i)(2) and the Bankruptcy Code as a whole preempted the plaintiff's state law claims. *See id.* at 419. The Third Circuit engaged in a detailed discussion of preemption as it relates to the availability of state court remedies based on conduct in bankruptcy proceedings. *See id.* at 418–22.

Neither express nor conflict preemption were at issue in *Rosenberg*; only field preemption was arguably applicable. *See id.* at 419. Regarding field preemption, the court stated: "The inquiry we make is whether there is enough evidence in the text, structure, or purpose of § 303(i) or the Bankruptcy Code as a whole to rebut the presumption against

7

preemption and say that it was Congress's 'clear and manifest intent' to preempt state law causes of action for non-debtors based on the filing of an involuntary bankruptcy petition." *Id.* at 419 (footnote omitted). The court noted that "field preemption requires congressional intent that is clear and manifest, and this is lacking when Congress is silent on what courts are to do with state law remedies for non-debtors." *Id.* at 420.

The court was not persuaded by the defendant's concerns that "permitting state law claims against creditors would be inconsistent with the comprehensive nature of the Bankruptcy Code, the exclusive nature of federal court jurisdiction over bankruptcies, and the uniform nature of bankruptcy law." *Id.* Regarding the uniformity concern, the Third Circuit was "content to rely on the traditional comity between the [federal and state] systems to deal adequately and innovatively with such common problems." *Id.* at 420–21 (alteration to original) (citation and quotation marks omitted). The court "trust[ed] that state courts faithfully will account for federal bankruptcy law to the extent it may be relevant to a state law claim against a creditor." *Id.* at 421.

In addition to the aforementioned analysis, the Third Circuit addressed the Ninth Circuit's decision in *In re Miles*, 430 F.3d 1083 (9th Cir. 2005). In *Miles*, the Ninth Circuit held that section 303(i)(2) "completely preempts state law tort actions for damages predicated upon the filing of an involuntary bankruptcy petition." *Id.* at 1092. The Third Circuit explicitly rejected both that holding and the rationale of Ninth Circuit. *See Rosenberg*, 835 F.3d at 421. Specifically, the court stated:

> We do not find *Miles* persuasive on the preemption issue. To start, its analysis of § 303(i) is inconsistent with our decision in *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 52 (3d Cir. 1988), where we held that § 303(i) is not an exclusive remedy for debtors who convert an involuntary Chapter 7 bankruptcy petition to a voluntary Chapter 11 reorganization. *U.S. Express Lines Ltd.*, 281 F.3d at 393 n.5 (noting that *Miles* is in tension with *Paradise Hotel*). We also

8

> think the analysis is inconsistent with the presumption against preemption, which, as we have discussed, requires that congressional intent to preempt state law must be clear and manifest. *In re Fed.–Mogul Glob. Inc.*, 684 F.3d at 365. Near the beginning of its analysis, the *Miles* Court admitted that the "Bankruptcy Code and its legislative history are silent on whether Congress intended 11 U.S.C. § 303(i) to provide the exclusive basis for awarding damages predicated upon the filing of an involuntary bankruptcy petition." 430 F.3d at 1089. If we apply faithfully the presumption against preemption, silence on the part of Congress should be the end of the analysis. But the Court went on to "infer from Congress's clear intent to provide damage awards only to the debtor ... that Congress did not intend [non-debtors] to be able to circumvent this rule by pursuing those very claims in state court." *Id.* at 1091. Absent evidence that Congress actually meant for § 303(i) to be an exclusive remedy, we do not make the same inference.

*Id.* at 421–22 (internal footnotes omitted). The Third Circuit also indicated that they "express no opinion on whether similar state law claims brought by debtors would be subject to preemption." *Id.* at 419 n. 1.

In *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002), the court held that "Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the inherent powers of a court," do not preempt claims under Pennsylvania's Dragonetti Act, 42 Pa. C.S. § 8351, or claims under the common law for abuse of process. *Id.* at 392–94. The court noted that "[u]nder the Rules Enabling Act, 28 U.S.C. § 2072(b), procedural rules may not supplant substantive rights . . . ." *Id.* at 392. The court also pointed out that the "line between procedure and substance is notoriously difficult to draw." *Id.* One way to determine whether a remedy is substantive is to examine "[t]he breadth of the remedy . . . ." *Id.* The court then discussed how the breadth of the remedy under the Dragonetti Act is broad, whereas remedies under Rule 11 and 28 U.S.C. § 1927 are narrow. *See id.* Specifically, the Dragonetti Act provides for both compensatory and punitive damages, *see id.*, but Rule 11 is "generally limited to counsel fees or fines" and section 1927 covers "counsel fees alone . . . ." *Id.*

Finally, the Third Circuit favorably discussed the decision in *Paradise Hotel* and noted that, despite the fact that section 303(i)(2) of "[t]he Bankruptcy Code provides more extensive sanctions than those afforded by the Rules of Civil Procedure or 28 U.S.C. § 1927 . . . we have held that a state claim for malicious abuse of process was not preempted." *Id.* at 393. Like in *Rosenberg*, the court highlighted the need to find that Congress "intend[ed] preemption . . . ." *Id.* The court concluded that "the Federal Rules of Civil Procedure do not preempt claims for abuse of process and similar torts providing relief for misconduct in federal litigation." *Id.*

The Bank has attempted to distinguish *Paradise Hotel*, *Rosenberg*, and *U.S. Express Lines*. While at first glance these cases appear to be facially distinguishable, a deeper analysis reveals that they likely are not. In fact, as discussed below, *Paradise Hotel* and *Rosenberg* were likely stronger cases for preemption than the case at hand. Moreover, when viewed together, these cases stand for the principle that the Third Circuit refuses to find field preemption absent clear and manifest congressional intent.

In this case, express and conflict preemption are inapplicable. Thus, the only arguably applicable type of preemption here is field preemption. On field preemption the court is unable to find clear congressional intent to preempt these claims. The Bank argues that "Congress has expressed its intent that core bankruptcy matters be handled in a federal forum by making bankruptcy jurisdiction exclusive in the federal district courts in the first instance." Def.'s Br. at ECF p. 10. The Bank also argues that "[l]ayering state claims about bankruptcy conduct on top of the pre-existing federal sanctions governing those matters would indisputably alter the balance of incentives and disincentives that Congress has created in the bankruptcy area." *Id.* at ECF p. 12. Unfortunately for the Bank, exclusivity, uniformity, and balance arguments such as these are unavailing after *Rosenberg* because the Third Circuit considered and rejected these arguments.

10

*See Rosenberg*, 835 F.3d at 418–22. Absent clear congressional intent for preemption, the court was "content to rely on the traditional comity between the two systems to deal adequately and innovatively with such common problems." *Id.* at 420–21 (quotation marks and citation omitted). The court sees no reason to depart from the Third Circuit's well-reasoned analysis on these arguments.

Next the Bank argues that "Congress specifically demonstrated its intent to leave regulation of the parties before the bankruptcy courts in the hands of the federal courts alone by including various provisions in the Bankruptcy Code to preclude or remedy the misuse of the bankruptcy process by participants." Def.'s Br. at ECF p. 11. The Bank points specifically to 11 U.S.C. § 105(a), which provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Robbins, however, accurately points out that section 105(a) is an "inherent authority" remedy. Pl.'s Br. at ECF p. 17. In other words, this provision merely reiterates the court's inherent power to manage litigation and is not a substantive remedy similar to the state law claims pursued in this case.

In that sense, the Bank's section 105(a) argument is quite analogous to the Rule 11 argument advanced in *U.S. Express Lines*. As in *U.S. Express Lines* where federal litigation management statutes did not preempt state substantive remedies under the Dragonetti Act, here too, federal litigation management statutes do not preempt the state substantive remedies pursued by Robbins. *See U.S. Express Lines*, 281 F.3d at 392 ("[P]rocedural rules may not supplant substantive rights . . . ."). The other statutes highlighted by the Bank are similarly unavailing.

11

*See* Def.'s Br. at ECF p. 16 (arguing that Robbins could have pursued remedies under 28 U.S.C. § 1927 or Federal Rule of Bankruptcy Procedure 9011). 28 U.S.C. § 1927 and Federal Rule of Bankruptcy Procedure 9011 are both litigation management (*i.e.*, inherent court power) statutes. Consequently, the analysis that applied to section 105(a) under *U.S. Express Lines* applies to these provisions as well.

Additionally, *Rosenberg* and *Paradise Hotel* provide a strong reason to not find preemption here. Unlike in *Rosenberg* and *Paradise Hotel* where the defendants argued that the state remedies were field preempted by a specific substantive section of the Bankruptcy Code (*i.e.*, section 303(i)(2)), here the Bank is arguing that either the Bankruptcy Code or federal litigation management statutes generally preempts Robbins' state law claims.[1] *See* Def.'s Br. at ECF p. 10. Because the defendants in *Rosenberg* and *Paradise Hotel* were able to point to a specific, powerful, substantive provision in the Bankruptcy Code, *Rosenberg* and *Paradise Hotel* were stronger candidates for preemption than this case. In other words, it is more likely that Congress intended to preempt state remedies when it provided for a powerful substantive federal remedy in the Bankruptcy Code (such as section 303(i)(2) in *Rosenberg* and *Paradise Hotel*). It is less likely that Congress intended to preempt state remedies when it did not provide a substantive remedy, but only provided general federal litigation management provisions (such as the remedies the Bank points to here). Yet, in the former, stronger situation—the situation that was present in *Rosenberg* and *Paradise Hotel*—the Third Circuit refused to find preemption. At bottom, it would be inconsistent to find congressional intent to preempt here when the Third Circuit has refused to find that same intent in two clearer, stronger cases.

---

[1] Section 303 is inapplicable in this case because the underlying bankruptcy proceeding involved a voluntary petition and an adversary proceeding (rather than an involuntary petition).

The Bank argues that *Rosenberg* and *Paradise Hotel* are distinguishable because section 303(i)(2) was unavailable to the plaintiffs in those cases. According to the Bank, unlike the plaintiffs in *Rosenberg* and *Paradise Hotel*, here Robbins had available remedies. *See* Def.'s Br. at ECF p. 16. Specifically, Robbins could have pursued remedies under Bankruptcy Rule 9011, 28 U.S.C. § 1927, or 28 U.S.C. § 105(a). *See id.* This argument, however, misses the mark.

First, as discussed above, these litigation management provisions are fundamentally distinct from a powerful substantive remedy like section 303(i)(2). *See U.S. Express Lines*, 281 F.3d at 392. Second, whereas section 303(i)(2) is specific to misconduct arising from involuntary petitions, none of the litigation management provisions cited by the Bank are specific to conduct arising out of an adversary proceeding such as the one it filed in the underlying bankruptcy case. Third, litigation management remedies like the ones the Bank identifies here would have been available to the plaintiff in *Paradise Hotel* because they were a party to the bankruptcy proceeding. Yet the Third Circuit never discussed those remedies or addressed them, let alone found them remotely persuasive. *See Rosenberg*, 835 F.3d 418–22. Thus, the Bank's argument that Robbins had federal remedies available that the plaintiffs in *Rosenberg* and *Paradise Hotel* did not have is unavailing.

Finally, the Bank argues that footnote one in the *Rosenberg* opinion shows that the instant case is distinguishable from *Rosenberg*. The Third Circuit "express[ed] no opinion on whether similar state law claims brought by debtors would be subject to preemption." *Id.* at 419 n. 1 (alteration to original). Contrary to the Bank's argument, this statement does not indicate that the Third Circuit "express[es] no opinion" on the issue before the court. When viewed in the context of the facts in *Rosenberg*, the Third Circuit's statement in footnote one has minimal bearing on this case.

The Third Circuit was addressing whether the Bankruptcy Code preempted state law claims brought by a debtor for conduct arising out of an involuntary petition. This is an important distinction. The plaintiffs in *Rosenberg* were not debtors, and accordingly, the section 303(i)(2) remedy was unavailable to them. Arguably, state law claims asserted by a debtor for conduct arising out of an involuntary petition would be very strong candidates for preemption. Congress has provided an express remedy (section 303(i)(2)) for that conduct and the "gap" rationale employed in *Rosenberg*—where section 303(i)(2) was unavailable because the plaintiffs were not debtors—would no longer be available. That situation, however, is very different from the situation in this case. Here, the state law claims arise out of an adversary proceeding, not an involuntary petition. Consequently, section 303(i)(2) is not at issue here and footnote one has very little, if any, bearing on the outcome in this case.

## IV. CONCLUSION

Ultimately, this case comes down to the simple issue of whether Congress expressed a "clear and manifest intent" to field preempt these state law claims. Congress has offered no guidance on whether these remedies preempt similar state law claims; none of the federal litigation management statutes identified by the Bank state that they are "exclusive" remedies. As the Third Circuit poignantly noted in *Rosenberg*, congressional intent "is lacking when Congress is silent on what courts are to do with state law remedies . . . ." 835 F.3d at 420.

Accordingly, the court cannot hold that these claims are preempted. To do so, the court would have to find congressional intent to preempt claims in a case that has less evidence of congressional intent than two cases where the Third Circuit held that there was no congressional intent to preempt. The court would also have to adopt uniformity and exclusivity rationales the Third Circuit has explicitly rejected. Following binding precedent as the court must, the court

14

finds that the Bankruptcy Code does not preempt the state law claims at issue in this case. Accordingly, the court must deny the motion for summary judgment.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.